```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MELVIN J. HERRING,

                              Plaintiff,

        - against -

SUFFOLK COUNTY POLICE DEPARTMENT,
BROOKHAVEN MEMORIAL HOSPITAL,
DETECTIVE VICTORIA McGUIRE, Shield #1377,
DETECTIVE JOHN DOE of 7th Precinct, DOCTOR
LIAM LAM, Brookhaven Memorial Hospital,

                              Defendants.
-----------------------------------------------------------------X
```

**REPORT AND RECOMMENDATION**
CV-17-5904 (JFB)(AYS)

**ANNE Y. SHIELDS, United States Magistrate Judge:**

<u>Pro se</u> Plaintiff, Melvin Herring ("Plaintiff" or "Herring"), commenced this action on October 6, 2017, pursuant to 42 U.S.C. § 1983, against several Defendants, including Defendant Doctor Lien Lam, incorrectly sued herein as Liam Lam ("Dr. Lam"), who treated Plaintiff on one occasion on September 27, 2016. Plaintiff claims that Dr. Lam caused him to lose his "protected privilege of confidentiality" under the Health Insurance Portability and Accountability Act ("HIPAA") and under the New York State Patient's Bill of Rights. (Am. Compl. ¶¶ 44-52.)

Before the Court is Dr. Lam's motion to dismiss the Complaint in its entirety, as alleged against her, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] (DE [46].) On April 23, 2018, the Honorable Judge Joseph F. Bianco referred Dr. Lam's motion to the undersigned to report and recommend as to whether the motion should be granted. (DE

---

[1] While Plaintiff's claims against Dr. Lam were initially alleged together with claims against Brookhaven Memorial Hospital, Plaintiff voluntarily dismissed his action against Brookhaven Memorial Hospital by letter dated May 10, 2018 (DE [60].) The District Court so ordered the dismissal on May 16, 2018. (DE [62].)

1

[56].) For the reasons set forth below, it is respectfully recommended that Dr. Lam's motion be granted, and that the Complaint, as alleged against Dr. Lam, be dismissed in its entirety.

## BACKGROUND

The facts set forth below are those set forth in Plaintiff's complaint. As discussed below, they are accepted as true for the purposes of this motion.

On September 26, 2016, at approximately 12:45 p.m., Plaintiff was arrested by several officers and detectives from the Suffolk County Police Department outside his residence in Mastic, New York, immediately after exiting his vehicle. (Compl., DE [1], ¶ 1.) Plaintiff was placed against his vehicle by Defendant Detective Victoria McGuire ("Detective McGuire") and searched, at which time his keys, his wallet and his cell phone were removed from his person. (Id. ¶ 2.) Using Plaintiff's keys, the officers opened and searched Plaintiff's vehicle, removing several items from the car, including a hat, a jacket and a shirt. (Id. ¶ 3.)

Plaintiff was then escorted to a police vehicle and driven to the Seventh Precinct, where he was taken to an interrogation room and handcuffed to a table. (Id. ¶¶ 3-6.) Detective McGuire and Defendant Lawrence Gualtieri ("Detective Gualtieri"), initially sued herein as "John Doe of 7th Precinct," (DE [9]), were present in the interrogation room. (Id. ¶ 6.) Detective Gualtieri advised Plaintiff that he was there for questioning relating to his alleged involvement in several robberies in Suffolk County, at which point Plaintiff invoked his right to counsel. (Id. ¶ 7.) The detectives then left the interrogation room. (Id.)

After about two minutes, Detective Gualtieri is alleged to have reentered the interrogation room, and to have physically assaulted Plaintiff with a police baton, striking him on the left shoulder, left side of the neck, back of the head, arm and left rib. (Id. ¶ 8.) Plaintiff begged for

2

Detective Gualtieri to stop, telling the detective that he could not breathe and that he has a cardiac condition and a pacemaker, at which point the attack ceased. (Id. ¶ 9.)

Detective Gualtieri came and went from the interrogation room several more times over the next few minutes. (Id. ¶¶ 10-12.) Plaintiff alleges that he confessed to the robberies out of fear after seeing the baton in Detective Gualtieri's hand again. (Id. ¶ 12.) Plaintiff dictated his confession to Detective Gualtieri, attributing the robberies to his heroin addiction. (Id. ¶ 13.) Plaintiff signed his confession, was placed in a line-up and then placed in a holding cell overnight. (Id. ¶¶ 14-16.) Plaintiff alleges that he complained of pain and difficulty breathing throughout the night. (Id. ¶ 16.)

The next morning, September 27, 2016, while being transported to the Suffolk County District Court in Central Islip, other detainees noticed Plaintiff having chest pain and difficulty breathing and advised the officer driving the van. (Id. ¶ 17.) Plaintiff was taken by ambulance to the emergency room at Brookhaven Memorial Hospital, where he was secured and remained in police custody. (Id. ¶ 18.) Plaintiff was then examined by Dr. Lam. (Id. ¶ 19.) A police officer remained present during the entire examination. Plaintiff alleges that the presence of the police officer prevented him from advising Dr. Lam about his assault at the Seventh Precinct. (Id.)

Dr. Lam medically cleared Plaintiff and he was then transferred to the Fifth Precinct for the night. (Id. ¶ 21.) On September 28, 2016, Plaintiff was transported to the District Court and arraigned. (Id.) Following his arraignment, Plaintiff was transferred to the Suffolk County Correctional Facility in Yaphank, New York. (Id. ¶ 22.) Plaintiff thereafter commenced this action on October 6, 2017, alleging violations of his Fourth, Sixth, Eighth, and Fourteenth Amendment Rights, pursuant to Section 1983. (Id. ¶¶ 24-43.) Plaintiff further alleges that Dr.

3

Lam violated Plaintiff's privacy and confidentiality rights under HIPAA and the New York State Patient's Bill of Rights by permitting a police officer to remain with Plaintiff during his physical examination at Brookhaven Memorial Hospital. According to Plaintiff, such actions prevented him from informing Dr. Lam of the physical assault he suffered at the Seventh Precinct. (Id. ¶¶ 44-54.) While Plaintiff's Section 1983 claims are not expressly pled against Dr. Lam, given Plaintiff's pro se status, the Court will construe the Complaint liberally to include such claims.

Dr. Lam now moves to dismiss Plaintiff's Complaint, as alleged against her, on the ground that Plaintiff has failed to demonstrate state action on her part, a prerequisite for a finding of liability under Section 1983. Dr. Lam further asserts that neither HIPAA, nor the New York State Patient's Bill of Rights contain a private right of action, and therefore Plaintiff cannot maintain claims brought pursuant to those acts. Despite being afforded multiple extensions of time by the District Court, Plaintiff has failed to file any opposition to Dr. Lam's motion. (DE [53], [62], [65], [69].) As a result, Dr. Lam did not file any reply papers. (DE [71].)

## DISCUSSION

I.   Legal Standard

A district court should dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) where the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When reviewing a motion to dismiss for lack of jurisdiction, "the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'" Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 (S.D.N.Y. 2013) (quoting J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F F.3d 107, 110 (2d Cir. 2004)) (alteration in original). The Court may also "consider affidavits and other materials

4

beyond the pleadings to resolve the jurisdictional question." Ighile v. Kingsboro ATC, No. 16-CV-4294, 2018 WL 1970737, at *2 (E.D.N.Y. Apr. 25, 2018) (citing cases).

Conversely, when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court is required to accept all factual allegations in the complaint as true and to draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Town of Babylon v. Fed. Hous. Fin. Agency, 699 F.3d 221, 227 (2d Cir. 2012). "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." Iqbal, 556 U.S. at 678-79 (citation omitted); see also Twombly, 555 U.S. at 555 (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. Iqbal, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 557).

II.     Construction of a Pro Se Complaint

In light of the fact that Plaintiff is proceeding pro se, his submissions are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89,

5

94 (2007) (citation and quotation marks omitted). Thus, his Complaint is to be liberally construed, Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that [it] suggest[s]." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation and quotation marks omitted). As noted by the Second Circuit, "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)) (alteration in original).

Despite the liberal construction rules applicable to Plaintiff's papers, his pro se status, however, "does not exempt [him] from compliance with relevant rules of procedural and substantive law." Boddie v. New York State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth, 710 F.2d at 95). Indeed, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and citations omitted) (alteration in original).

"When a motion to dismiss is unopposed," as Dr. Lam's motion is here, "the failure to oppose itself does not justify dismissal." Howard v. City of New York, No. 11 Civ. 5899, 2012 WL 5816976, at *4 (S.D.N.Y. Nov. 14, 2012). Instead, "a court still assumes the truth of a pleading's factual allegations and tests only its legal sufficiency, which the court is capable of determining based on its own reading of the pleading and knowledge of the law." Rios v. Schlein, No. 16-cv-6448, 2017 WL 3671194, at *2 (S.D.N.Y. Aug. 24, 2017).

III. Section 1983

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress

6

for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). Accordingly, to prevail on any claim brought pursuant to Section 1983, "a plaintiff must demonstrate that he has been denied a constitutional right or federal statutory right and that the deprivation occurred under color of state law." Tsesarskaya v. City of New York, 843 F. Supp. 2d 446, 454 (S.D.N.Y. 2012) (citing West v. Atkins, 487 U.S. 42, 48 (1988)) (additional citation omitted).

IV. Disposition of the Section 1983 Claim: State Action

The question raised in this motion is whether Dr. Lam, an undisputedly private citizen, can be considered a state actor for purposes of Section 1983 liability. "[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). There are three tests for determining whether state action exists: the "joint action" test, the "public function" test, and the "state compulsion" test. Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (articulating three tests formulated by the Supreme Court for determining the existence of state action). "It is not enough, however, for a plaintiff to plead state involvement in 'some activity of the institution [or person] alleged to have inflicted injury upon the plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury' giving rise to the action." Id. at 257-58 (quoting United States v. Int'l Bd. of Teamsters, 941 F.2d 1292, 1296 (2d Cir. 1991)) (emphasis omitted).

A. Plaintiff's Complaint as to Dr. Lam Fails to Satisfy the Joint Action Test

Under the "joint action" test, the actions of a private entity or individual will be considered attributable to the state where "the state provides 'significant encouragement' to the

7

Case 2:17-cv-05904-MKB-SIL   Document 74   Filed 10/19/18   Page 8 of 12 PageID #: 360

entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." Sybalski, 546 F.3d at 257 (quoting Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296 (2000)).

Plaintiff's Complaint is wholly devoid of any allegations that would render Dr. Lam a "willful participant in joint activity with the state." Nor are there any allegations that Dr. Lam's functions as a private doctor are "entwined" with state policies or that New York State somehow provides "significant encouragement" to Dr. Lam. Plaintiff's sole allegation against Dr. Lam is that she permitted a police officer to remain present during her physical examination of Plaintiff. "Mere cooperation with a state official or investigatory agency is insufficient to establish state action." Estiverne v. Esernio-Jenssen, 910 F. Supp. 2d 434, 442 (E.D.N.Y. 2012) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)) (additional citation omitted). Unquestionably, the simple presence of a police officer during Plaintiff's physical examination is not enough to render Dr. Lam's conduct "state action" for purposes of Section 1983 liability. Accordingly, Dr. Lam cannot be deemed a state actor under the joint action test.

B.  Plaintiff's Complaint as to Dr. Lam Fails to Satisfy the Public Function Test

To satisfy the state action requirement under the "public function" test, the private entity must "perform a function that is 'traditionally the exclusive prerogative of the state.'" Archer v. Economic Opportunity Comm'n, 30 F. Supp. 2d 600, 606 (E.D.N.Y. 1998) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982)). Plaintiff's Complaint fails to allege any facts to support a finding that Dr. Lam performed a function that is traditionally carried out by the state. Indeed, care of patients by doctors is not a function that is "exclusively reserved by the state." Sybalski, 546 F.3d at 260. Accordingly, Dr. Lam cannot be found to be a state actor under the "public function" test.

8

      C.    <u>Plaintiff's Complaint as to Dr. Lam Fails to Satisfy the State Compulsion Test</u>

Finally, under the "state compulsion" test, a finding of state action requires that the private entity "acts pursuant to the 'coercive power' of the state or is controlled' by the state." <u>Id.</u> at 258 (quoting <u>Brentwood Acad.</u>, 531 U.S. at 296). Plaintiff's Complaint is devoid of any allegations demonstrating that the state coerced Dr. Lam in any way or controlled the physical examination conducted by Dr. Lam. A finding of state action through state compulsion "requires actual coercion by a state actor that impacts upon the private physician's decision-making." <u>Doe v. Harrison</u>, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003) (citing <u>Ruhlmann v. Ulster County Dep't of Soc. Servs.</u>, 234 F. Supp. 2d 140, 161 (N.D.N.Y. 2002)). There is nothing alleged in Plaintiff's Complaint to support a finding that Dr. Lam was coerced in any way, let alone with respect to her medical decision-making, concerning Plaintiff. Accordingly, the state compulsion test is not met here either.

Based on the foregoing, Plaintiff's Complaint fails to state a claim against Dr. Lam pursuant to Section 1983. Accordingly, to the extent Plaintiff's claims pursuant to Section 1983 are alleged against Dr. Lam, this Court respectfully recommends that they be dismissed.

V.    <u>Disposition of Plaintiff's Claims under HIPAA and the New York Patient's Bill of Rights</u>

Plaintiff alleges that Dr. Lam violated his right to confidentiality under both HIPAA and the New York Patient's Bill of Rights by permitting a police officer to remain present during Plaintiff's physical examination, thereby preventing Plaintiff from advising Dr. Lam of the assault he suffered during his interrogation at the Seventh Precinct. (Compl. ¶¶ 48-51.)

It is "well-established that there is no private right of action under the HIPAA law." <u>Gaines v. Nassau Univ. Med. Ctr.</u>, No. 18-CV-2109, 2018 WL 3973015, at *3 (E.D.N.Y. Aug. 16, 2018) (citing <u>Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.</u>, 639 F. Supp. 2d

9

371, 377 (S.D.N.Y. 2009) (collecting cases across numerous circuits)); see also Hernandez v. Acacia Network, No. 17-cv-1779, 2017 WL 4350516, at *1 (E.D.N.Y. Apr. 28, 2017) ("[T]here is no private right of action under HIPAA."); Gomez v. New York City Police Dep't, 191 F. Supp. 2d 293, 296 n.1 (S.D.N.Y. 2016) ("HIPAA does not provide for either an express or implied private right of action."). Rather, "HIPAA enforcement actions are in the exclusive purview of the Department of Health and Human Services," Gaines, 2018 WL 3973015, at *3 (citing 42 U.S.C. § 300gg-22(a)), and only the Secretary of Health and Human Services is authorized to enforce HIPAA's privacy regulations. See Hernandez, 2017 WL 4350516, at *1 (citing 42 U.S.C. §§ 1320d-1320d-8). In view of the uncontroverted law that HIPAA affords no private right of action, Plaintiff's claim against Dr. Lam for violation of HIPAA is not plausible and should be dismissed.

Similarly, the New York Patient's Bill of Rights, codified at 10 N.Y.C.R.R. § 405.7, contains no provision that appears to give rise to a private right of action. See Walters v. NYC Health Hosp. Corp., No. 02 Civ. 751, 2005 WL 324242, at *3 (S.D.N.Y. Feb. 9, 2005); see also Armstrong v. Brookdale Univ. Hosp. and Med. Ctr., No. 98 CV 2416, 2002 WL 13222, at *8 (E.D.N.Y. Jan. 3, 2002) (stating that "a private cause of action based on a violation of § 405.7 has not been recognized"). Rather, this statutory provision specifies "a standard of care applicable to certain hospitals." Walters, 2005 WL 324242, at *3. Accordingly, any cause of action against Dr. Lam pursuant to the New York Patient's Bill of Rights fails to state a claim upon which relief may be granted and should be dismissed.

VI.   Leave to Amend

Although not requested by Plaintiff, since he failed to file any opposition to the within motion, the Court notes the general rule that a court "should not dismiss without granting leave

10

to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999) (citation and quotation marks omitted). Here, however, "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Leave to amend should therefore be denied as futile, and Plaintiff's claims against Dr. Lam should be dismissed with prejudice. See id. (citing Hunt v. Alliance N. Am. Gov't Income Trust, 159 F.3d 723, 728 (2d Cir. 1998)); see also Roth v. CitiMortgage Inc., 756 F.3d 178, 183 (2d Cir. 2014) ("Leave to amend need not be granted where the proposed amendment would be futile.").

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Dr. Lam's motion to dismiss, appearing at Docket Entry [46] herein, be GRANTED in its entirety and that all claims against Dr. Lam be dismissed, with prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Further, the Court is directing counsel for Dr. Lam to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Plaintiff at his last known address(es) and to file proof of service on ECF by October 24, 2018. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and

11

recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
October 19, 2018

/s/ Anne Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge